IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

DAVID KOPP,                           :
                                      :
     Plaintiff,                  :
                                      :
v.                                    :
                                      :        No. 3:15-CV-17 (CAR)
CITY OF GREENSBORO, GEORGIA  :
and GLENN WRIGHT, in his              :
individual capacity,                  :
                                      :
     Defendants.                 :
_____  :

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants the City of Greensboro, Georgia and Mayor Glenn Wright (collectively, "Defendants") move this Court for summary judgment on Plaintiff David Kopp's claims for First Amendment retaliation under 42 U.S.C. § 1983, the Georgia Constitution, and Georgia's Whistleblower Act. For the following reasons, Defendants' Motion [Doc. 18] is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

Plaintiff was appointed Municipal Court Judge for the City of Greensboro, Georgia ("the City") in 1984, a position he held for almost 30 years. Plaintiff filed this suit claiming on February 3, 2014, the City Council did no reelect him in retaliation for speaking out on matters of public concern.

**The Municipal Court Judge and the City Council**

The City of Greensboro is governed by the Mayor and a five-member City Council. At all times relevant to this case, the City Council was comprised of Council Members Morris Miller, Shirley Wynn, Chris Moore, Ronald McWhorter, and Trey Rhodes. The Mayor was Glenn Wright. The City Manager was Larry Postell.[1] The City elects the Mayor and Council Members in an at-large-election every four years.

The Municipal Court Judge is a part-time position, which, according to the City Charter, "shall be appointed by the city council and serve at the pleasure of the same" and "may be removed for cause by a vote of four members of the city council."[2] The Municipal Court Judge is responsible for the "efficient and successful administration" of the court.[3]

Although no formal policy exists regarding the term of the Municipal Court Judge, the City maintains its "practice" is to have the Municipal Court Judge's term correspond with the Mayor's and Council Members' four-year terms.[4] However, the City did not consistently reappoint the Municipal Court Judge in this manner, as Plaintiff was reappointed at various times ranging from 3.5 to 6 years.[5] The Municipal

---

[1] Pl. Dep., [Doc. 18-3] at 66-67; Postell Dep., [Doc. 25] at 11-12.
[2] City Charter, Defs' Ex. 2-B, [Doc. 35-22] at 5.
[3] City Charter, Defs' Ex. 2-B, [Doc. 35-22] at 5.
[4] Wright Aff., [Doc. 19-2] at 2. Pl.'s Facts, [Doc. 35-1] at 3.
[5] Plaintiff was appointed on September 17, 1984 and reappointed: April 4, 1988, January 3, 1994, January 5, 1998, January 7, 2002, February 20, 2006, and January 4, 2010. *See* Defs' Exs. 5-12, [Docs. 10-17].

Court Judge is appointed exclusively by vote of the City Council; the Mayor and the City Manager do not have a vote.[6]

**Plaintiff speaks out about the Mill Project**

In August of 2013, Plaintiff, along with other citizens in the community, began to voice concerns over a building project in the City, Mary Leila Lofts (the "Mill project"), which the Mayor supported.[7] Plaintiff spoke at a public hearing on the Mill project, where he voiced his concerns over dangerous toxic levels that would result from the development, as well as what he believed was misleading information that had been presented to the City by the developer.[8] Although the City Council originally supported the Mill project, because of the opposition to the project, they ultimately withdrew their support at the August 5, 2013 Council Meeting.[9] The Mayor continued to remain in support of the Mill project.[10]

**Plaintiff speaks out about the Mayor's unethical behavior**

Along with speaking out about the Mill project, in December of 2013, Plaintiff began voicing his concerns to the District Attorney, the City Attorney, and the City Manager, about what he believed was unethical behavior by the Mayor. Plaintiff's concerns centered around his belief that the Mayor had acted unethically by not

---

[6] Wright Dep., [Doc. 26] at 188; City Charter, Defs Ex. 2 [Doc. 18-7] at 4.
[7] Postell Dep., [Doc. 25] at 119-20; Wright Dep., [Doc. 26] at 127-28.
[8] Pl's. Dep., [Doc. 18-4] at 35-39.
[9] Postell Dep., [Doc. 25] at 119; Zeir Dep., [Doc. 28] at 18; August 5, 2013 Meeting Minutes, [Doc. 18-29].
[10] Postell Dep., [Doc. 25] at 119-20; Wright Dep., [Doc. 26] at 127-28.

disclosing his son's ownership of an unlicensed personal care home to the City Council.[11] Plaintiff also expressed his concern that the Mayor neglected to enforce City ordinances due to his son's ownership of the unlicensed personal care home.[12]

On December 6, 2013, Plaintiff first complained about the Mayor's unethical behavior to District Attorney Fred Bright.[13] In early January of 2014, Plaintiff also met with City Manager Postell about his concerns and informed Postell about his discussions with the District Attorney.[14]

**The City Council announces it will seek applications for Municipal Court Judge and interviews candidates**

On January 6, 2014, at the first Council Meeting of 2014-2018 term, the Mayor asked the City Council to seek applicants for the positions of Municipal Court Judge and City Attorney.[15] Various City Council Members remembered discussing comments from police officers and the Chief of Police that they did not feel Plaintiff supported the police in the Municipal Court.[16] The City Council approved the Mayor's call for applications and decided to vote at the next meeting in February. City Manager Postell

---

[11] Pl's. Dep., [Doc. 18-4] at 80, 81, 83.
[12] Pl's. Dep., [Doc. 18-4] at 80-85.
[13] Pl's. Dep., [Doc. 18-4] at 63-65, 80-83; Pl's Complaint to District Attorney, Defs' Ex. 28 [Doc. 18-33].
[14] Postell Dep., [Doc. 25] at 110-11; Postell Aff., [Doc. 19-1] at 2; Pl's. Dep., [Doc. 18-4] at 111-12; 186.
[15] Wright Dep., [Doc. 26] at 170-72; City Charter, Defs' Ex. 2-B, [Doc. 35-22] at 5.
[16] McWhorter Dep., [Doc. 22] at 20; Moore Dep., [Doc. 24] at 24, 34-35; Miller Dep. [Doc. 23] at 9-12, 18.

was instructed to advertise that applications would be accepted for City Attorney and Municipal Court Judge. The Personnel Board, a three person subset of the City Council, is in charge of interviewing, ranking, and recommending their choice for Municipal Court Judge and City Attorney to the City Council.[17] The Personnel Board was comprised of Council Members Wynn, Moore, and Miller.[18]

After the call for applications, on January 17, 2014, Plaintiff met with City Attorney Dick Schmidt to discuss his concerns about the Mayor.[19] On January 21, 2014, Schmidt and Postell discussed Plaintiff's concerns with each other.[20] On that same day, Postell told the Mayor Plaintiff had a list of concerns about him. In response, the Mayor just laughed.[21]

On January 31, 2014, the Personnel Board interviewed three candidates for Municipal Court Judge, Donarell Green, Dexter Wimbish, and Plaintiff. Although they did not have a vote, the Mayor and Postell attended the interviews. During Plaintiff's interview, the Mayor asked Plaintiff if he was a member of the group opposing the Mill project.[22] The Mayor did not ask the other candidates any questions. The Mayor said he

---

[17] Wynn Dep., [Doc. 24] at 24, 26.
[18] Id.
[19] Schmidt Memo, Defs' Ex. A, [Doc. 39-1] at 2.
[20] Postell Aff., [Doc. 19-1] at 2.
[21] Postell Dep., [Doc. 25] at 112; Postell Aff., [Doc. 19-1] at 3; Wright Dep., [Doc. 26] at 126.
[22] Wright Dep., [Doc. 26] at 179.

asked Plaintiff about the Mill project because he wanted to know if they "could move forward as a team."[23]

After the interviews, the Personnel Board individually ranked the candidates. They then gave their rankings to Postell to tally.[24] Wynn said her top choice was Green, and her second choice was Wimbish.[25] Moore said his top choice was Wimbish. Miller said he could not remember if he voted for Wimbish first and Plaintiff second, but he thought he voted for Plaintiff and Wimbish "one and one" because he was "torn" between the two of them.[26] The Personnel Board did not take any action and made no formal recommendation to the City Council.[27]

**The City Council does not reelect Plaintiff**

On February 3, 2014, the City Council met to vote on the Municipal Court Judge position. Although disputed as to whether this happened before or after the vote, Postell said he and City Attorney Schmidt told the City Council Plaintiff's concerns about the Mayor's ethics violations.[28] At the February 3rd meeting, the Mayor told the City Council Wimbish was his "recommendation, along with the Personnel Board" for Municipal Court Judge[29] However, the Personnel Board did not actually recommend

---

[23] Wright Dep., [Doc. 26] at 180, 182.
[24] Wynn Dep., [Doc. 24] at 24, 26; Moore Dep., [Doc. 24] at 131.
[25] Wynn Dep., [Doc. 27] at 98.
[26] Miller Dep., [Doc. 23] at 24, 27.
[27] Miller Dep., [Doc. 23] at 57.
[28] Postell Dep., [Doc. 25] at 125-27; Postell Aff., [Doc. 19-1] at 3.
[29] February 3, 2014 Meeting Minutes, Pl's. Ex. 32, [Doc. 26-32] at 5.

Wimbish and took no action previous to the meeting.[30] In his deposition, the Mayor said Postell told him the Personnel Board's top choice was Wimbish.[31]

After the Mayor's statement recommending Wimbish, Councilman Rhodes asked for further discussion and proceeded to tout Plaintiff's credentials.[32] The Council then voted. Rhodes voted for Plaintiff. Moore maintained his support for Wimbish. Wynn said she changed her vote from Green to Wimbish because of the Mayor's statement.[33] Likewise, McWhorter said he voted for Wimbish based on the Mayor's statement.[34] Miller said although he was previously torn between the two candidates, the "main reason" he voted for Wimbish instead of Plaintiff was because of a discussion he had with Plaintiff the night before the vote.[35]

The night before the vote, Miller met with Plaintiff. Plaintiff informed Miller of his intent to report the Mayor's ethics violations. Miller said his discussion with Plaintiff about reporting the Mayor influenced him to vote for Wimbish instead of Plaintiff.[36] When the final vote was taken, Plaintiff was not reelected. Instead, Wimbish was

---

[30] January 31, 2014 Meeting Minutes, Pl's. Ex. 29, [Doc. 26-29] at 1.
[31] Wright Dep., [Doc. 26] at 193-195. Postell Dep., [Doc. 25] at 142; Defs' Reply Br., [Doc. 40] at 6. It is disputed as to how Postell tallied the votes of the Personnel Board in order to arrive at Wimbish as the top choice.
[32] February 3, 2014 Meeting Minutes, Pl's. Ex. 32, [Doc. 26-32] at 5.
[33] Wynn Dep., [Doc. 27] at 104.
[34] McWhorter Dep., [Doc. 22] at 23.
[35] Miller Dep., [Doc. 23] at 63.
[36] Miller Dep., [Doc. 23] at 63.

elected 4-1, with one vote for Plaintiff. The City Council also voted to not reelect City Attorney Schmidt that day.

Plaintiff now alleges the City's election of Wimbish was retaliatory for his statements opposing the Mill project and disclosing to the District Attorney the Mayor's allegedly unethical behavior. He asserts claims of First Amendment retaliation pursuant to 42 U.S.C. § 1983 and the Georgia Constitution, as well as retaliation in violation of the Georgia Whistleblower Act. Defendants contend they are entitled to summary judgment on each of Plaintiff's claims because Plaintiff cannot establish his speech is causally connected to his not being reelected.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[37]  The moving party has the burden of showing that there is no genuine issue of material fact, and may do so by pointing to an absence of evidence to support an essential element of the nonmoving party's case.[38]  Once the moving party has met its burden, the burden shifts to the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'"[39]  The

---

[37] Fed.R.Civ.P. 56(c).
[38] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).
[39] *Id*. at 324.

reviewing court should grant summary judgment only if the combined body of evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmoving party.[40]

## DISCUSSION

As noted above, Plaintiff alleges violations of the United States Constitution, the Georgia Constitution, and the Georgia Whistleblower Act.  The Court will first address Plaintiff's federal claims and then address Plaintiff's state law claims.

## I.   Section 1983 Claims

Plaintiff claims the City and the Mayor, in his individual capacity, retaliated against him for exercising his First Amendment rights by speaking out about the Mill project and his concerns about the Mayor's unethical behavior.  42 U.S.C. § 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."  A plaintiff may bring a claim under Section 1983 against a person in their individual or official capacity, or against a governmental entity.

Because there is no *respondeat superior* liability under § 1983, liability can attach to the City only if the alleged discrimination or retaliation by its employees was caused by an "official policy" or "custom" of the City.[41] Plaintiff can demonstrate an official policy

---

[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[41] *See Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-92 (1978).

or custom by showing that the City's adverse employment decision resulted from either: (1) a policy statement, ordinance, regulation or decision officially adopted and promulgated by board members; (2) a custom that, while not formally adopted, was so permanent and well settled as to have the force of law;[42] or (3) a decision by an official who possesses "final authority to establish municipal policy with respect to the action ordered."[43] The Court notes the parties do not address Defendants' policy-making authority. They seem to concede the City Council has sole policy-making authority in appointing the Municipal Court Judge.[44]

### A. First Amendment Retaliation Claim against the City

A government employer may not retaliate against a public employee for speech protected under the First Amendment.[45] For a public employee to sustain a claim of retaliation for protected speech under the First Amendment, the Eleventh Circuit has stated a plaintiff must establish: 1) his speech was on a matter of public concern; 2) his free speech interest outweighed his employer's interest in promoting efficient public services; and 3) his speech played a "substantial part" in the employer's decision to discharge him.[46] Here, Defendants concede, for purposes of this Motion, Plaintiff has

---

[42] *See id.* at 690-91.
[43] *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991).
[44] City Charter, Defs' Ex. 2-B [Doc. 35-22] at 5.
[45] *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir. 2006).
[46] *Anderson v. Burke County, Ga.*, 239 F. 3d 1216, 1219 (11th Cir. 2001).

met the first two elements of his claim but contend he cannot show the third element—his speech played a substantial part in not being reelected.

To establish the third element, Plaintiff must show his speech was a substantial motivating factor in his termination.[47] If Plaintiff is able to make this showing, the burden shifts to the City to prove it would have not reelected Plaintiff even in the absence of his speech.[48] Because the final element addresses the causal link between a plaintiff's speech and his termination, it is a question of fact for the jury to resolve, unless the evidence is undisputed.[49]

The Eleventh Circuit has identified several relevant factors to consider when determining if a plaintiff's speech is a substantial motivating factor in his termination, including: (1) whether termination closely followed the protected speech; (2) whether the employee showed that other explanations for the termination were pretextual; (3) whether the employer made comments connecting the termination to protected speech; (4) whether the employer provided varied explanations for the termination; (5) who initiated termination proceedings against the employee; (6) whether there was evidence of management's hostility; and (7) whether the employer had a motive to retaliate.[50] "No one factor is outcome determinative, and the employee's burden is not a heavy

---

[47] *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006).

[48] *Id.*

[49] *Moss v. City of Pembroke Pines*, 782 F.3d 613, 618 (11th Cir. 2015) (citations omitted).

[50] *Polion v. City of Greensboro*, 614 F. App'x 396, 398-99 (11th Cir. 2015) (citing *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1291 n. 20 (11th Cir. 2001)).

one."[51] Taking all reasonable inferences in Plaintiff's favor, genuine issues of material fact exist as to whether Plaintiff's speech was a substantial motivating factor in the City's decision not to reelect him.

First, Plaintiff has shown temporal proximity. The City Council voted not to reelect Plaintiff on February 3, 2014—approximately six weeks after he complained about the Mayor's unethical behavior to the District Attorney, around one month after he complained to the City Attorney and City Manager, and only one day after Plaintiff told Councilman Miller he was going to complain to the City Attorney about the Mayor. Such evidence satisfies close temporal proximity between Plaintiff's protected speech and the adverse employment action, and thus "it is [] reasonable to infer that the activity was the cause of [his not being reelected]."[52]

Second, a genuine issue of material fact exists as to when the City Council knew of Plaintiff's complaints about the Mayor.  Other than Miller (who met with Plaintiff the night before the Council's vote), City Council Members Wynn, Moore, and McWhorter said they do not remember when they heard of Plaintiff's complaints about the Mayor, but they believed it was after they voted not to reelect him.[53] However, Postell originally stated in his deposition he and City Attorney Schmidt told the Council in a

---

[51] *Id*.

[52] *Stanley*, 219 F.3d at 1291 n. 20.

[53] McWhorter Dep., [Doc. 22] at 25; Wynn Dep., [Doc. 27] at 110-11; Moore Dep. [Doc. 24] at 78.

January 2014 meeting about Plaintiff's complaints regarding the Mayor.[54] Thus, taking evidence in the light most favorable to Plaintiff, Council Members knew of Plaintiff's complaints prior to their vote. In a later-filed affidavit, Postell contends he did not inform the Council at the January 21st meeting, nor does he "recall mentioning [Plaintiff's] comments about the Mayor" at the February 3rd meeting.[55] Although Plaintiff asks this Court to find Postell's affidavit a sham and not consider it, the job of weighing the discrepancies in Postell's testimony is best left in the province of a jury.[56]

Finally, the record contains varied explanations for the Plaintiff's non-reappointment. The City contends the Council voted for Wimbish over Plaintiff because they "had some understanding" the municipal court was not running efficiently and because Wimbish wanted to give back to the community.[57] However, three of the five members sitting on the City Council did not cite this as the reason for their vote. Two said the reason they voted for Wimbish was because of the Mayor's representation that the Personnel Board had recommended Wimbish as their top choice.[58] And the other Councilmember said he voted for Wimbish instead of Plaintiff because Plaintiff told

---

[54] Postell Dep., [Doc. 25] at 124.

[55] Postell Aff., [Doc. 19-1] at 3. The Court also notes that Postell stated in his deposition that City Attorney Schmidt discussed Plaintiff's complaints with the Council. However, City Attorney Schmidt was replaced by the Council the same day as Plaintiff on February 3, 2014.

[56] *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (noting "the district court must not resolve factual disputes by weighing conflicting evidence," "since it is the province of the jury to assess the probative value of evidence") (citations omitted).

[57] Defs' MSJ Br., [Doc. 18-2] at 15-16.

[58] McWhorter Dep., [Doc. 22] at 23; Wynn Dep., [Doc. 27] at 104.

him he was going to report the Mayor's ethics violations.[59] A reasonable juror could find these inconsistencies in the City's proffered non-retaliatory reasons for not reelecting Plaintiff unworthy of credence.[60]

Along with alleging direct liability against the City, Plaintiff attempts to impose liability against the City under a cat's paw theory.[61] Because the Court has already found questions of material fact exist as to the City's direct liability, the Court need not address Plaintiff's cat's paw theory here.

In sum, the Court finds Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether his speech was a substantially motivating factor in the City's decision to not reelect him. Based on this same evidence, there is also a genuine issue as to whether the City would have reached the same decision in the absence of Plaintiff's protected speech.[62] Therefore, the Court finds sufficient evidence to create a jury question as to Plaintiff's Section 1983 First Amendment retaliation

---

[59] Miller Dep., [Doc. 23] at 63-64.

[60] *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (noting that in evaluating pretext within the *McDonnell-Douglas* framework, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence").

[61] *See Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1332 (11th Cir. 1999); *See, e.g., Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011).

[62] *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1564 (11th Cir. 1995) (noting that if plaintiff "produced enough evidence for a reasonable jury to conclude that a retaliatory animus substantially motivated his termination, [defendant] could only rebut this showing by convincing the jury, not the court, that a legitimate reason justified the decision") (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 289-90 (1982)).

claims against the City and denies Defendants' Motion for Summary Judgment on this claim.

### B. First Amendment Claim against the Mayor

The Mayor contends he is entitled to qualified immunity on Plaintiff's Section 1983 claims against him. The qualified immunity defense provides government officials performing discretionary functions with complete protection from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[63] "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."[64] Although a defendant traditionally bears the burden of establishing his defenses, "[o]nce a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."[65] The plaintiff must then establish that the defendant violated a constitutional right.[66] If a court finds that a constitutional right was violated, the plaintiff must also prove that the violation was "clearly established" at the time of the alleged violation.[67]  For the law to be clearly established, the law "must have earlier been developed in such a concrete and factually defined context to make it

---

[63] *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[64] *Cottone v. Jenne*, 326 F.3d 1352, 1358-59 (11th Cir. 2003) (internal citation omitted).

[65] *Id*. at 1358 (emphasis added).

[66] *Crosby*, 349 F.3d at 1329.

[67] *Id*.

obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law."[68]

Where, as in this case, there is no dispute as to the discretionary nature of the actions complained of, the Court proceeds to the two-step test.[69] However, this two-step test may be done in whatever order is deemed most appropriate for the case.[70] Defendants argue the Mayor is entitled to qualified immunity because there is no evidence he violated clearly established federal rights. The Court agrees.

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give the official fair warning that violating that right is actionable."[71] Whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court and the Eleventh Circuit Court of Appeals.[72]  The relevant inquiry is "fact specific,"[73] and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional

---

[68] *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1285 (11th Cir. 2000) (quoting *Lassiter v. Alabama A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).

[69] *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

[70] *Pearson v. Callahan*, 555 U.S. 223, 234, 236 (2009).

[71] *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005) (internal quotation and citations omitted).

[72] *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1033 (11th Cir. 2001) (en banc).

[73] *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir. 1994).

violation on "materially similar" facts.[74]   This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, "but it is to say that in light of pre-existing law the unlawfulness must be apparent."[75] "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."[76]

It is well established in this Circuit that an employer may not retaliate against an employee for engaging in protected speech.[77] It is undisputed in this case that the City Council, not the Mayor, made the final decision to not reelect Plaintiff. Despite this fact, Plaintiff seeks to hold the Mayor liable under a cat's paw theory.

The cat's paw theory allows a plaintiff to establish causation by showing that the decision-maker followed a biased recommendation without independently investigating the complaint against the employee.[78] Under the cat's paw theory, the biased recommender is using the decision-maker as a mere conduit, or "cat's paw," to give effect to the recommender's retaliatory animus.[79] Thus, a plaintiff can hold the

---

[74] *Lassiter v. Ala. A&M Univ. Bd. of Trs.*, 28 F.3d 1146, 1150 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

[75] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted).

[76] *Hope*, 536 U.S. at 741.

[77] *Travers v. Jones*, 323 F.3d 1294, 1295 (11th Cir. 2003) ("The law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech.")

[78] *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999); *See, e.g., Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011).

[79] *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998).

decision-maker liable for the recommender's retaliatory animus.[80] Here, however, Plaintiff seeks to impose liability on the Mayor, the recommender, for his retaliatory animus. Although other circuits have held individual liability under Section 1983 can attach to the recommender motivated by retaliatory animus wielding the "cat's paw,"[81] neither this Circuit nor the Supreme Court has recognized such liability can attach.[82] Therefore, the Mayor's actions were not in violation of clearly established law. Thus, the Mayor is entitled to qualified immunity, and all claims against him in his individual capacity under Section 1983 are hereby dismissed.

## II.     State Law Claims

---

[80] *See e.g., Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1216 (S.D. Ala. 2014), *aff'd*, 614 F. App'x 396 (11th Cir. 2015) (noting because First Amendment jurisprudence implicates only a "motivating factor" standard of causation, a cat's paw theory can be applied in the First Amendment context, but neglecting to find it can be applied in the context of municipal liability).

[81] *See Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (stating that five other circuits have held that individual liability under Section 1983 is appropriate on a cat's paw theory). *See also Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1216 (S.D. Ala. 2014), *aff'd*, 614 F. App'x 396 (11th Cir. 2015). The Court notes in *Polion*, the district court assumed the Eleventh Circuit "does or would permit [a cat's paw] theory to be raised in the First Amendment context." However, in the Eleventh Circuit's unpublished opinion affirming the lower court, they did not address this issue only noted that the lower court was correct in finding there was not a question of fact as to retaliatory animus. Moreover, unpublished cases are not binding precedent in this Circuit. *See* 11th Cir. R. 36-2.

[82] *Kamensky v. Dean*, 148 F. App'x 878, 880 (11th Cir. 2005) (per curiam) (noting the Eleventh Circuit has not extended individual liability to situations where a governmental authority "rubber stamps" a recommendation); *see also Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004) (noting "[a]s to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983").

Plaintiff also brings state law claims under the free speech clause of the Georgia Constitution against the City and the Mayor,[83] as well as claims under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, against the City.[84] The Court addresses these claims below.

## A.  Free Speech and Georgia Whistleblower Claims against the City

Neither Plaintiff nor Defendants addressed Plaintiff's free speech claim under the Georgia Constitution separate and apart from Plaintiff's First Amendment claim under Section 1983. Instead, the parties appear to concede, and other courts have found, the analysis of a free speech retaliation claim under the Georgia Constitution is the same as under Section 1983.[85] Therefore, the Court finds, for the same reasons stated above, there are genuine issues of material fact precluding summary judgment on this state law claim.[86]

---

[83] Article I, Section I, Paragraph V ("No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty.").

[84] In his Complaint, Plaintiff asserts a claim under the Georgia Whistleblower Act only against the City and not the Mayor. *See* [Doc. 1-1] at 14. As the Court previously noted above, even if Plaintiff had asserted a claim against the Mayor, the Mayor had no decision-making power in the vote, and, therefore, could not be held liable under the Georgia Whistleblower Act. *See* O.C.G.A. § 45-1-4.

[85] Defs' MSJ Br., [Doc. 18-2] at 19 n. 16; Pl's Resp. Br., [Doc. 35] at 1, 25.

[86] *See Smith v. Atlanta Indep. Sch. Dist.*, 633 F. Supp. 2d 1364, n.1 (N.D. Ga. 2009) ("The court may apply the same analysis to Plaintiff's free speech . . . claim[s] under the United States and Georgia Constitutions"); *Palmer v. Stewart County Sch. Dist.*, No. 4:04–cv–21 (CDL), 2005 WL 1676701, at *12 n.11 (M.D. Ga. June 17, 2005) ("[T]he analysis of Plaintiff's state constitutional claims is the same as the analysis of the related federal claims, and therefore subject to the same disposition as Plaintiff's federal claims."); *see also Cahill v. Cobb Place Assocs.*, 271 Ga. 322, 323, 519 S.E.2d 449 (1999) ("Georgia's constitutional free speech provision does not confer any

Plaintiff also claims the City retaliated against him in violation of the Georgia Whistleblower Act, O.C.G.A. § 45‑1‑4. The Georgia Whistleblower Act states: "No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to [ ] a supervisor."[87] The statute also expressly permits "a public employee who has been the object of retaliation" to "institute a civil action" seeking (1) an injunction, (2) reinstatement, or (3) compensation for lost wages and benefits.[88] To establish a *prima facie* case under Georgia's Whistleblower Act, the plaintiff must present evidence that (1) the employer falls under the statute's definition of "public employer"; (2) the employee disclosed "a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency"; (3) the employee was then discharged, suspended, demoted, or suffered some other adverse employment decision by the public employer; and (4) there is some causal relation between (2) and (3).[89]

The City's arguments as to Plaintiff's whistleblower claim parallels its arguments under Section 1983. The City contends Plaintiff cannot sustain a claim under the Georgia Whistleblower Act because he cannot establish causation. Under the Georgia

---

greater free speech right than that protected by the First Amendment."); *Chamblee Visuals, LLC v. City of Chamblee*, 270 Ga. 33, 506 S.E.2d 113 (1998) (noting that when construing the Georgia free speech clause, the Georgia Supreme Court applies analogous First Amendment standards in the absence of controlling state precedent).

[87] O.C.G.A. § 45‑1‑4(d)(2).

[88] *Id*. at § 45‑1‑4(e)(1)‑(2)(E).

[89] *See Forrester v. Ga. Dep't of Human Servs*., 308 Ga. App. 716, 722, 708 S.E.2d 660 (2011) (citations omitted) (physical precedent only).

Whistleblower Act, the causal link element "is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."[90] As noted above, genuine issues of material fact exist as to causation, in particular as to whether the City Council was aware of Plaintiff's protected speech at the time of their vote. Accordingly, the Court denies Defendants' Motion for Summary Judgment on Plaintiff's Georgia whistleblower claim against the City.

### B. Free Speech Claim against the Mayor

Along with the City, Plaintiff seeks to hold the Mayor liable for retaliation under the free speech clause of the Georgia Constitution. As noted above, the analysis of this claim under the Georgia Constitution is the same as under Section 1983. However, Plaintiff presents no arguments to the Court, apart from his arguments under Section 1983, as to the Mayor's individual liability. As previously noted, Plaintiff does not claim the Mayor had any decision-making power in the vote not to reelect Plaintiff. Moreover, to the extent Plaintiff seeks to reassert a cat's paw theory as a means of holding the Mayor liable for his recommendation to the City Council, Plaintiff has failed to point the Court to any Georgia authority, or binding Eleventh Circuit precedent, imposing such liability. Therefore, because the Court finds the Mayor cannot be held liable for Plaintiff's free speech claim under the Georgia Constitution, Defendants' Motion for Summary Judgment on this claim is granted.

---

[90] *Freeman v. Smith*, 324 Ga. App. 426, 750 S.E.2d 739, 743 (2013) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2011)).

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Motion for Summary Judgment [Doc. 18]. The Court **GRANTS** Defendants' Motion on Plaintiff's Section 1983 First Amendment claim and state law claim against the Mayor and, thus, he is **DISMISSED** from this action. However, the Court **DENIES** Defendants' Motion on Plaintiff's Section 1983 and state law claims against the City.

 

**SO ORDERED,** this 18th day of August, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

JRF/ssh